# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

***

LARRY GLENN MCDOWELL,

               Plaintiff,

vs.

NEVADA, *et al*.,

               Defendants.

2:13–cv–02236–JCM–VCF

__ORDER AND__

__REPORT & RECOMMENDATION__

Before the court are Plaintiff Larry Glenn McDowell's application to proceed *in forma pauperis* (#1[1]), complaint (#1-1), and *ex parte* motion for appointment of counsel (#2).

## BACKGROUND

This matter involves incarcerated *pro se* Plaintiff Larry Glenn McDowell's section 1983 action against twelve Defendants for violations of McDowell's Eighth Amendment rights. (*See* Compl. (#1-1) at 6–18). McDowell alleges to have been repeatedly bitten by a noxious spider and subsequently denied medical care. (*Id*.) For purposes of the motions before the court, the relevant facts include: (1) the circumstances surrounding the first spider bite; (2) the circumstances surrounding the second spider bite; (3) the circumstances surrounding the third spider bite; and, (4) the allegations of McDowell's complaint. Each is discussed below.

## I.  __The First Spider Bite__

On November 22, 2012, McDowell was "bitten." (Compl. (#1) at ¶ 4). It appeared to be a spider bite. (*Id*.) The spider had bitten McDowell's genitals. (*Id*. at ¶¶ 37, 71). McDowell informed Defendant

---

[1] Parenthetical citations refer to the court's docket.

1

Correctional Officer Whitecloth, "on more than one occasion," of his urgent need of medical care. (*Id.* at ¶ 5). Whitecloth, however, denied McDowell "access to sick call and Medical Kite,"[2] (*id.* at ¶ 7), even though McDowell made this request to Whitecloth "several times a day." (*Id.* at ¶ 8).

On November 23, 2012, the wound worsened. (*Id.* at ¶ 9). McDowell had to stand while eating. (*Id.* at ¶ 11). Blood and pus drained from the wound, "soiling [McDowell's] clothing and bed coverings." (*Id.* at ¶ 11). McDowell submitted a sick call request demanding immediate medical treatment. (*Id.* at ¶ 9).

On November 30, 2012, McDowell stopped Defendant Nurse Sonja, a night shift nurse for unit 8. (*Id.* at ¶ 13). She told him to submit a Medical Kite. (*Id.* at ¶ 14).

On November 31, 2012, Nurse Sonja gave McDowell seven days of antibiotics, and a doctor performed "a prostate exam." (*Id.* at ¶ 17). McDowell alleges that "no doctor check[ed] the wounds" on his genitals while performing the prostate exam. (*Id.*)

## II.    **The Second Spider Bite**

On February 5, 2013, the spider returned and bit again. (*Id.* at ¶ 33). It wounded McDowell's "right thigh, [and] left side of [his] penis and strodum [*sic*]." (*Id.* at ¶ 37). The spider bite was four centimeters long and one centimeter in length. (*Id.*)

McDowell immediately contacted Defendant Correctional Officers Nixon and Holiday. (*Id.* at ¶¶ 34, 38). McDowell told Nixon and Holiday "that something was eating away [my] flesh." (*Id.* at ¶ 36). Nixon and Holiday, however, allegedly responded by saying that there "are no Kites and [McDowell] must wait [to be] sent to sick call." (*Id.* at ¶ 34). McDowell alleges, "[o]n many occasions,

---

[2] As defined by the Nevada Department of Corrections' Administrative Regulations, a Medical Kite and/or Service Report is a form that the inmate completes to request medical treatment. *See, e.g.*, Nev. Dept. Corr. Admin. Reg. § 617.01.

2

[I] aske[ed] Nixon and Holiday to assist [me] getting to the infirmary to have [a] procedure done[; but I] was denied by both Nixon and Holiday to continue [my] treatment." (Id. at ¶ 53).

On February 8, 2013, McDowell was given a Medical Kite. (*Id*. at ¶ 39). But, the wounds had become "deeper and wider [and] [i]nfection set in and [began] to spread." (*Id*. at ¶ 40). Because of the wounds, and the fact that laundry is only done once a week, McDowell was "now sleeping in pus and blood." (*Id*. at ¶ 41).

On February 15, 2013, McDowell received a response from one of his Medical Kites, which instructed him to visit the infirmary. (*Id*. at ¶ 45). Defendant Dr. Chin treated the injuries and prescribed ten days of antibiotics. (*Id*. at ¶ 46). Dr. Chin also ordered the wounds to be drained, cleaned, and redressed every two days. (*Id*. at ¶ 47).

But, Defendant Nurse Jake—to whom the order was given—refused. (*Id*. at ¶ 48). Nurse Jake only treated McDowell once, and then stopped. (*Id*. at ¶ 48). Nurse Jake also allegedly failed to place McDowell on the follow up list so that McDowell could have this wounds dressed. (*Id*. at ¶ 49).

### III.   **The Third Spider Bite**

On May 3, 2013, the spider bit again, causing "a reoccurrence of the previous medical conditions." (*Id*. at ¶ 68). McDowell submitted repeated medical requests seeking immediate medical treatment, explaining that "something was eating away [McDowell's] flesh" and causing McDowell's genitals to swell and "double in size." (*Id*. at ¶ 71). It had caused "large bumps" between his legs and "a large hole" on his right thigh. (*Id*. at ¶ 72).

On May 8, 2013, after five days of waiting for treatment, non-party Corrections Officer Moran told McDowell to submit another Medical Kite. (*Id*. at ¶ 74).

3

On May 14, 2013, McDowell again informed Moran of McDowell's condition. (*Id*. at ¶ 76). Moran, in turn, told Defendant unit-9, day-shift Nurse John Doe, "I can only infer." (*Id*. at ¶ 77). Nothing was done. (*Id*.)

On May 16, 2013, McDowell filed an informal grievance requesting medical attention. (*Id*. at ¶ 78). Nothing was done. (*Id*.)

On May 18, 2013, McDowell filed an emergency grievance. (*Id*. at ¶ 83). In response, McDowell was brought to the infirmary. (*Id*. at ¶ 86). Once there, Defendant Nurse Greg examined the wounds. (*Id*.) Nurse Greg allegedly did not know what to do. (*Id*.) He could not find appropriate medication, did not clean or dress the wounds, and "was confused." (*Id*. at ¶ 87). Nurse Greg decided to admit McDowell to the hospital; but there was no room. (*Id*.)

Later that day, McDowell received a fifteen-day cycle of antibiotics, including Bactrim h49 and rifampin 300. (*Id*. at ¶ 92). McDowell, however, remained unsure what exactly "was eating his flesh." (*Id*. at ¶ 90).

Thereafter, several of McDowell's wounds burst. (*Id*. at ¶ 93). McDowell informed Defendant pill-nurse Jane Doe of this condition. (*Id*.) In response, Jane Doe told McDowell that he needed to submit a Medical Kite and that "she had none." (*Id*. at ¶ 94).

On May 21, 2013, Defendant Dr. Arenas treated McDowell. (*Id*. at ¶ 95). Dr. Arenas reviewed McDowell's medical record, examined his current condition, diagnosed McDowell with "Hep C-B," and stated that McDowell "should have undergone treatment." (*Id*. at ¶ 96). Dr. Arenas also explained that McDowell "had caught MSRA" (*i.e.*, methicillin-resistant staphylococcus aureus). (*Id*. at ¶ 104).

In response, McDowell explained that he had been receiving treatment for hepatitis before being incarcerated and that he had "sent Kites to [Defendant] Miss Ruby, Head of [the] Disease Department at High Desert State Prison, asking to continue treatment." (*Id*. at ¶ 98).

4

Following McDowell's visit with Dr. Arenas, Dr. Arenas allegedly did nothing. (*See id.* at ¶¶ 102–09). As a result, on June 1, 2013, McDowell submitted another Medical Kite. (*Id.* at ¶ 108).

## IV.   McDowell Files Suit

On December 6, 2013, McDowell filed suit in U.S. District Court for the District of Nevada, alleging that Nevada, Officer Nixon, Officer Holiday, Officer Whitecloth, Nurse Jake, Nurse Greg, Nurse Sonja, Nurse Jane Doe, Nurse Joe Doe, Nurse Adams, Dr. Chin, Dr. Arenas, Miss Ruby, and Cynthia Sablica violated McDowell constitutional rights under the U.S. Constitution and Nevada Constitution by delaying medical care on November 22, 2012 (Count I), February 5, 2013 (Count II), and May 3, 2013 (Count III).

### DISCUSSION

McDowell's filings present three questions: (1) whether McDowell may proceed *in forma pauperis* under 28 U.S.C. § 1915(e); (2) whether McDowell's complaint states a plausible claim for the denial, delay, or interference with, medical treatment; and, (3) whether McDowell's claim presents "exceptional circumstances" justifying appointment of counsel. Each is discussed below.

## I.   McDowell may Proceed *in Forma Pauperis*

McDowell's application to proceed *in forma pauperis* is granted. 28 U.S.C. § 1915(a)(1) permits a plaintiff to bring a civil action "without prepayment of fees or security thereof" if the plaintiff submits a financial affidavit that demonstrates the plaintiff's "is unable to pay such fees or give security therefor." Pursuant to section 1915(a)(1), McDowell submitted a financial affidavit (#1). According to the affidavit, McDowell is unemployed and incarcerated Southern Desert Correctional Center. (*Id.*) McDowell has not been employed since 2010 and has twenty five dollars in his inmate account. (*Id.*) McDowell's application to proceed *in forma pauperis* is, therefore, granted.

**II.**      **Whether McDowell's Complaint is Frivolous, Malicious, of Fails to State a Plausible Claim**

Because the court grants McDowell's application to proceed *in forma pauperis*, it must review McDowell's complaint to determine whether the complaint is frivolous, malicious, or fails to state a plausible claim. *See* 28 U.S.C. § 1915(e). The court's review of McDowell's complaint is guided by two legal standards: Federal Rule of Civil Procedure 8 and the Supreme Court's decision in *Hughes v. Rowe*, 449 U.S. 5 (1980).

   *A.      Legal Standards*

Federal Rule of Civil Procedure 8(a) provides that a complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2). The Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)  states that in order to satisfy Rule 8's requirements a complaint's allegations must cross "the line from conceivable to plausible." 556 U.S. at 680. The Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) and *Iqbal* prescribe a two-step procedure for determining whether a complaint's allegations cross that line.

First, the court must identify "the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 680. Factual allegations are not entitled to the assumption of truth if they are "merely consistent with liability," *id*. at 678, or "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Id*. at 681.

Second, the court must determine whether the complaint states a "plausible" claim for relief. *Id*. at 679. A claim is "plausible" if the factual allegations, which are accepted as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

6

If the factual allegation, which are accepted as true, "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* (citing FED. R. CIV. P. 8(a)(2)).

However, where an incarcerated *pro se* litigant is involved, courts are directed to hold the litigant to "less stringent standards." *See Hughes v. Rowe*, 449 U.S. 5, 10 n. 7 (1980). "Such litigants often lack the resources and freedom necessary to comply with the technical rules of modern litigation." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013) (citing *Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983)).

If the court dismisses a complaint under section 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

### B.      Claims in McDowell's Complaint that are Dismissed

The court finds that the majority of McDowell's complaint fails to state a plausible claim for relief. For the sake of clarity, the court divides its discussion of McDowell's complaint into the following categories: (1) claims that fail as a matter of law; (2) claims that failed to allege "factual matter;" (3) claims that fail to allege any wrongdoing; (4) claims that fail to "plausibly" allege wrongdoing; and, (5) claims that survive the court's review.

#### 1.      Claims that Fail as a Matter of Law

The court finds that the following claims fail as a matter of law: (i) all claims against the state of Nevada and (ii) all claims against all Defendants in their official capacity. Both are discussed below.

/// /// ///

/// /// ///

7

i.      *All claims against Nevada are dismissed with prejudice*

McDowell's section 1983 claims against the state of Nevada are dismissed with prejudice. To state a claim under section 1983, a complaint must allege: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

States, however, are not "persons" for purposes of section 1983. S*ee Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Hale v. Arizona*, 993 F.2d 1387, 1398 (9th Cir. 1993) (en banc). Indeed, section 1983 claims against states are legally "frivolous." *See Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

The court, therefore, recommends dismissing all claims against Nevada with prejudice and without leave to amend. *See Cato*, 70 F.3d at 1106.

ii.      *All damages claims against "official-capacity" defendants are dismissed with prejudice*

As discussed above, to state a claim under section 1983, a complaint must allege a violation of rights protected by the Constitution caused by a "person." *Crumpton*, 947 F.2d at 1420. State officials sued in their official capacity for damages, however, are not persons for purposes of section 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The court, therefore, recommends dismissing with prejudice all claims for damages against all Defendants in their official capacity. The court does not recommend granting McDowell leave to amend because amendment would be futile. *See Cato*, 70 F.3d at 1106.

The court, however, does not recommend dismissing McDowell's claims for injunctive relief against Defendants in their official-capacities. *See Will*, 491 U.S. at 71 n.10; *Flint*, 488 F.3d at 825; *Doe*, 131 F.3d at 839; *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir. 1992) (holding that state officials sued in their official capacity for injunctive relief are "persons" for purposes of section 1983); (*see infra* § B-5) (identifying the remaining Defendants).

Similarly, the court does not recommend dismissing McDowell's claims for damages against Defendants in their personal capacity. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003); *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992) (holding that state officials sued in their personal capacity are persons for purposes of section 1983); (*see infra* § B-5) (identifying the remaining Defendants).

### 2.   Claims that Fail to Allege "Sufficient" Factual Matter

The court also finds that the following claims fail to allege "sufficient" factual matter to "show[] that the [plaintiff] is entitled to relief": (i) all claims against Nurse Adams; (ii) all claims against Cynthia Sablica; and, (iii) all claims against Ruby.

#### i.   *All claims against Nurse Adams are dismissed*

The court recommends dismissing Defendant Nurse Adams. As discussed above, the Supreme Court's decisions in *Iqbal* and *Twombly* require complaints to contain, *inter alia*, "sufficient factual matter, accepted as true." *Iqbal*, 556 U.S. at 678. A complaint's legal conclusions, however, are no substitute for "sufficient factual" matter because they are not accepted as true. *See id.* ("[T]he tenant that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. . . [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.")

The court recommends dismissing Nurse Adams because McDowell has only pled legal conclusions, and not "sufficient factual" matter, in support of his claims against Nurse Adams. For instance, McDowell pled: (1) "Adams who is responsible for medical care generally and for screening, scheduling inmates to sick call, should have known that the spider could have been poisonous, caused paralyzation, gangrene, or even death;" (2) "Adams improper screening of Plaintiff's Medical Kite caused more injury to Plaintiff;" (3) "Adams change nurse who is responsible for medical care generally and for screening and scheduling inmates for sick call knew or should have known the severity of attention needed since she must not only view kite but medical file;" (4) "Adams failed to allow Plaintiff to see sick call in a timely manner and should have known that her actions as described herein[3] constituted deliberate indifference to Plaintiff's health and safety;" (5) "Adams is responsible for Plaintiff's medical needs." (Compl. (#1-1) at ¶¶ 20, 21, 55, 58, 59).

These are conclusions. Standing alone, they do not give rise to a "plausible" claim because they do not contain "sufficient factual" matter. *Iqbal*, 556 U.S. at 678. Therefore, McDowell's claims against Nurse Adams are dismissed.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to "less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against Nurse Adams by alleging a plausible claim against Nurse Adams. *Cato*, 70 F.3d at 1106.

### ii. All claims against Cynthia Sablica are dismissed

The court recommends dismissing Defendant Cynthia Sablica. As discussed above, the Supreme Court's decisions in *Iqbal* and *Twombly* require complaints to contain, *inter alia*, "sufficient factual

---

[3] Nowhere does McDowell's complaint contain facts alleging that Nurse Adams took any "actions." (*See generally* Compl. #1).

matter, accepted as true." *Iqbal*, 556 U.S. at 678. A complaint's legal conclusions, however, are no substitute for "sufficient factual" matter because they are not accepted as true. *See id.* ("[T]he tenant that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. . . [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.")

The court recommends dismissing Cynthia Sablica because McDowell has only pled legal conclusions, and not "sufficient factual" matter in support of his claims against Sablica. For instance, McDowell pled: (1) "Cynthia Sablica who is Director of Nursing knew of these practices but did nothing;" (2) "Cynthia Sablica [is] responsible for the permanent scares on plaintiff's body;" (3) "Sablica who knew or should have known of this practice did nothing to ensure Plaintiff's right to medical;" (4) "Cynthia Sablica who is the Director of Nursing knew or should have known of the Practice of how inmates are seen or scheduled." (Compl. (#1-1) at ¶¶ 23, 28, 64, 110).

These are conclusions. Standing alone, they do not give rise to a "plausible" claim because they do not contain "sufficient factual" matter. *Iqbal*, 556 U.S. at 678. Therefore, McDowell's claims against Cynthia Sablica are dismissed.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to "less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against Sablica by alleging a plausible claim against Sablica. *Cato*, 70 F.3d at 1106.

#### iii.     All claims against Ruby are dismissed

The court recommends dismissing Defendant Ruby. As discussed above, the Supreme Court's decisions in *Iqbal* and *Twombly* require, complaints to contain, *inter alia*, "sufficient factual matter, accepted as true." *Iqbal*, 556 U.S. at 678. A complaint's legal conclusions, however, are no substitute for

"sufficient factual" matter because they are not accepted as true. *See id.* ("[T]he tenant that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. . . [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.")

The court recommends dismissing Ruby because McDowell has only pled legal conclusions, and not "sufficient factual" matter, in support of his claims against Ruby. For instance, McDowell pled: (1) "Ruby . . . knew or should have known that their actions as described herein constituted deliberate indifference to Plaintiff's health and safety;" (2) "The action of defendant Ruby's failure to schedule Plaintiff to be seen by a doctor for constituted deliberate indifference towards Plaintiff;" and, (3) "The Plaintiff was denied adequate medical care by defendant . . . Ruby . . . for the seriousness of Plaintiff's injuries." (Compl. (#1-1) at ¶¶ 109, 120, 125(A)(1)).

These are conclusions. Standing alone, they do not give rise to a "plausible" claim because they do not contain "sufficient factual" matter. *Iqbal*, 556 U.S. at 678. The only factual allegation that McDowell pleads against Ruby is that McDowell, on an unidentified date, sent Ruby Medical Kites, "asking to continue [Hepatitis C] treatment." (Compl. (#1-1) ¶ at 98). This allegation, however, is "merely consistent with liability" and "amount[s] to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Iqbal*, 556 U.S. at 678, 681. Therefore, McDowell's claims against Ruby are dismissed.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to "less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against Ruby by alleging a plausible claim against Ruby. *Cato*, 70 F.3d at 1106.

12

3.    Claims that Fail to Allege Wrongdoing

The court also finds that the following claims fail to allege any wrongdoing: (i) claims against James G. Cox; (ii) claims against Nurse Sonia, (iii) claims against John Doe; and, (iv) claims against Jane Doe.

i.    *All claims against James G. Cox are dismissed*

The court recommends dismissing Defendant James G. Cox. The only place Cox's name appears in McDowell's filings is in the caption of McDowell's application to proceed *in forma pauperis*. It is unclear whether McDowell intended to name Cox as a defendant. For the sake of clarity, the court recommends dismissing Cox as a defendant. McDowell has not alleged wrongdoing by Cox and, therefore, did not state a plausible claim against Cox. *See Iqbal*, 556 U.S. 662, 678–79 (stating that a claim is "plausible" only if it creates "a reasonable inference of liability").

ii.    *All claims against Nurse Sonja are dismissed*

The court also recommends dismissing Defendant Nurse Sonja because McDowell did not allege wrongdoing by Nurse Sonja. The facts supporting McDowell's claims against Nurse Sonja are limited to: (1) Nurse Sonja was a night-shift nurse for unit 8; (2) McDowell sought medical care from Nurse Sonja on November 30, 2012; (3) Nurse Sonja instructed McDowell to submit and Medical Kite on November 30, 2012; and (4) Nurse Sonja gave McDowell seven days of antibiotics on November 31, 2012. (*See supra* BACKGROUND § I) (citing Compl. (#1-1) at ¶¶ 14–17).

McDowell, however, does not allege that Nurse Sonja violated any of McDowell's state or federal constitutional rights or engaged in any wrongdoing. (*See generally id*. at ¶¶ 18–28) (discussing Count I and alleging other Defendants, but not Nurse Sonja, violated the law); (*see also id*. at ¶¶ 112–25) (discussing McDowell's claims for relief and that alleging other Defendants, but not Nurse Sonja,

violated the law). Accordingly, McDowell's claims against Nurse Sonja do not cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

Even if McDowell did allege wrongdoing by Nurse Sonja, which he did not, any wrongdoing by Nurse Sonja would—on these facts—"amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Iqbal*, 556 U.S. at 681. A charitable reading of McDowell's complaint merely suggests that Nurse Sonja delayed administering medical to McDowell for one day. At best, this allegation is "merely consistent with liability," *id.* at 678, and therefore not entitled to the assumption of truth.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to "less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against Nurse Sonja by alleging a plausible claim Nurse Sonja. *Cato*, 70 F.3d at 1106.

### iii.   All claims against John Doe are dismissed

The court also recommends dismissing Defendant Nurse John Doe because McDowell did not allege wrongdoing by John Doe. The only fact supporting McDowell's claims against John Doe is that non-party Correctional Officer Moran told John Doe, "I can only infer." (*See supra* BACKGROUND § III) (citing Compl. (#1-1) at ¶ 77).

McDowell, however, does not allege that John Doe violated any of McDowell's state or federal constitutional rights or engaged in any wrongdoing. (*See generally id.* at ¶¶ 109–111) (discussing Count III and alleging other Defendants, but not John Doe, violated the law); (*see also id.* at ¶¶ 112–25) (discussing McDowell's claims for relief and that alleging other Defendants, but not John Doe, violated the law). Accordingly, McDowell's claims against John Doe do not cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

14

Even if McDowell did allege wrongdoing by John Doe, which he did not, any wrongdoing by John Doe would—on these facts—"amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Iqbal*, 556 U.S. at 681. A charitable reading of McDowell's complaint merely suggests that John Doe knew of, and refused to respond to, McDowell's medical needs. This allegation may support a "conceivable" claim against John Doe. Under Rule 8, however, claims must be "plausible." *Iqbal*, 556 U.S. at 680.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to "less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against John Doe by alleging a plausible claim against John Doe. *Cato*, 70 F.3d at 1106.

### iv.    All claims against Jane Doe are dismissed

The court also recommends dismissing Defendant Nurse Jane Doe because McDowell did not allege wrongdoing by Jane Doe. The facts supporting McDowell's claims against Nurse Jane Doe are limited to: (1) McDowell told Jane Doe that his wounds burst; (2) Jane Doe told McDowell he needed to submit a Medical Kite; and, (3) Jane Doe said that she did not have any Medical Kites. (*See supra* BACKGROUND § III) (citing Compl. (#1-1) at ¶¶ 93–94).

McDowell, however, does not allege that Jane Doe violated any of McDowell's state or federal constitutional rights or engaged in any wrongdoing. (*See generally id.* at ¶¶ 109–111) (discussing Count III and alleging other Defendants, but not Jane Doe, violated the law); (*see also id.* at ¶¶ 112–25) (discussing McDowell's claims for relief and that alleging other Defendants, but not Jane Doe, violated the law). Accordingly, McDowell's claims against Jane Doe do not cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

Even if McDowell did allege wrongdoing by Jane Doe, which he did not, any wrongdoing by Jane Doe would—on these facts—"amount to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Iqbal*, 556 U.S. at 681. A charitable reading of McDowell's complaint merely suggests that Jane Doe could have, but refused to, give McDowell a Medical Kite. At the very best, this allegation supports a "conceivable" claim against Jane Doe. Under Rule 8, however, claims must be "plausible." *Iqbal*, 556 U.S. at 680.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to "less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against Jane Doe by alleging a plausible claim against Jane Doe. *Cato*, 70 F.3d at 1106.

4.   <u>Claims that Fail to "Plausibly" Allege Wrongdoing</u>

The court finds that following claims fail to "plausibly" allege wrongdoing: (i) claims against Nurse Greg; (ii) claims against  Dr. Chin; and, (iii) claims against Dr. Arenas.

i.   *All claims against Nurse Greg are dismissed*

The court also recommends dismissing Defendant Nurse Greg because McDowell did not plausibly allege wrongdoing by Nurse Greg. The facts supporting McDowell's claims against Nurse Greg are limited to: (1) Nurse Greg responded by McDowell's May 18, 2013 emergency grievance; (2) Nurse Greg examined McDowell's wounds; (3) Nurse Greg "was confused;" (4) Nurse Greg did not clean or dress McDowell's wounds; (5) Nurse Greg decided to admit McDowell to the hospital; and, (6) McDowell received a fifteen-day cycle of antibiotics after seeing Nurse Greg. (*See supra* BACKGROUND § III) (citing Compl. (#1-1) at ¶¶ 83–92).

Based on these facts, McDowell concludes: (1) Nurse Greg "knew or should have known that their actions as described herein constituted deliberate indifference to Plaintiff's health and safety;" and,

(2) "[t]he failure of Defendant [Nurse] Greg to treat Plaintiff's injuries due to his lack of training and supervision caused Plaintiff serious medical needs to worsen in violation of the Eighth Amendment of the United States Constitution and constituted deliberate indifference." (Compl. (#1-1) at ¶¶ 109, 118).

These claims do not cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Two reasons support this conclusion. First, the facts that McDowell pled state that Nurse Greg did, in fact, treat McDowell. McDowell's complaint states that Nurse Greg responded to McDowell emergency grievance, examined the wounds, decided to admit McDowell to the hospital, and prescribed[4] McDowell antibiotics. This is the opposite "deliberate indifference." *See, e.g.*, *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (defining "deliberate indifference"); *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995) (defining "deliberate indifference").

Second, even if Nurse Greg did not treat McDowell, which he did, McDowell's claim against Nurse Greg "amount[s] to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Iqbal*, 556 U.S. at 681. A charitable reading of McDowell's complaint would state that Nurse Greg did not clean or dress McDowell's wounds and, therefore, violated McDowell's constitutional rights. However, this claim is at best "merely consistent with liability," *id*. at 678, and, therefore, not entitled to the assumption of truth.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to "less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against Nurse Greg by alleging a plausible claim against Nurse Greg. *Cato*, 70 F.3d at 1106.

---

[4] The court infers from the facts that Nurse Greg prescribed McDowell antibiotics because McDowell received antibiotics the same day that McDowell saw Nurse Greg and McDowell does not allege to have seen any other medical provider that on or before that day.

17

### ii.   *All claims against Dr. Chin are dismissed*

The court also recommends dismissing Defendant Dr. Chin because McDowell did not plausibly allege wrongdoing by Dr. Chin. The facts supporting McDowell's claims against Dr. Chin are limited to: Dr. Chin (1) treated McDowell's injuries, (2) prescribed ten days of antibiotics, and (3) ordered the wounds to be drained, cleaned, and redressed every two days. (*See supra* BACKGROUND § II) (citing Compl. (#1-1) at ¶¶ 45–47).

Based on these facts, and McDowell's medical condition, McDowell concludes that "Defendant Chin should have scheduled Plaintiff a follow-up to ensure treatment was given after she ordered" it. (Compl. (#1-1) at ¶¶ 65, 123).

This claim does not cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Two reasons support this conclusion. First, McDowell alleges that Dr. Chin did, in fact, schedule Nurse Jake to follow-up with McDowell and ensure that McDowell received the treatment Dr. Chin ordered. (Compl. (#1-1) at ¶¶ 48–49).

Second, even if Dr. Chin did not schedule Nurse Jake to follow-up with McDowell, which she did, McDowell's claim against Dr. Chin "amount[s] to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Iqbal*, 556 U.S. at 681. A charitable reading of McDowell's complaint would state that Dr. Chin treated McDowell but failed to follow-up. At best, this allegation is "merely consistent with liability," *id*. at 678, and, therefore, not entitled to the assumption of truth.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to "less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against Dr. Chin by alleging a plausible claim Dr. Chin. *Cato*, 70 F.3d at 1106.

18

### iii.    All claims against Dr. Arenas are dismissed

The court also recommends dismissing Defendant Dr. Arenas because McDowell did not plausibly allege wrongdoing by Dr. Arenas. The facts supporting McDowell's claims against Dr. Arenas are limited to: Dr. Arenas (1) treated McDowell, (2) reviewed McDowell's medical records, (3) examined his current condition, (4) diagnosed McDowell with Hepatitis C and MRSA, (5) stated that McDowell should have undergone treatment, and (5) did nothing thereafter. (*See supra* BACKGROUND § I)I) (citing Compl. (#1-1) at ¶¶ 95–104).

Based on these facts, McDowell concludes: (1) Dr. Arenas "knew or should have known that their actions as described herein constituted deliberate indifference to Plaintiff's health and safety;" and (2) "[t]he action of Defendant Arenas in his failure to allow continuation of treatment for Hep C was a disregard to Plaintiff's health, in violation of the Eighth Amendment of the United States Constitution and constituted deliberate indifference." (Compl. (#1-1) at ¶¶ 109, 122).

These claims do not cross "the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Two reasons support this conclusion. First, the facts that McDowell pled state that Dr. Arenas did, in fact, treat McDowell. McDowell's complaint states that Dr. Arenas treated McDowell's wounds, reviewed his medical records, examined condition, and diagnosed him with Hepatitis C and MRSA.

Second, even if Dr. Arenas did not treat McDowell, which he did, McDowell's claim against Dr. Arenas "amount[s] to nothing more than a 'formulaic recitation of the elements' of a constitutional" claim. *Iqbal*, 556 U.S. at 681. A charitable reading of McDowell's complaint merely suggests that Dr. Arenas knew of, and refused to voluntarily respond to, McDowell's medical needs. This allegation may support a "conceivable" deliberate indifference claim against Dr. Arenas. Rule 8, however, requires that the inference of deliberate indifference be "plausible." *Iqbal*, 556 U.S. at 680.

Nonetheless, because McDowell is an incarcerated *pro se* litigant, the court holds McDowell to

19

"less stringent standards," *Hughes*, 449 U.S. at 10 n. 7, and recommends granting McDowell leave to cure the deficiencies of his claims against Dr. Arenas by alleging a plausible claim against Dr. Arenas. *Cato*, 70 F.3d at 1106.

5.      Claims that survive the court's review

The following claims survive the court's review: (1) a claim for damages against Defendant Corrections Officer Whitecloth in his personal capacity for conduct on November 22, 2013 (Count I); (2) claims for injunctive relief against Defendant Corrections Officer Whitecloth in his official and personal capacities for conduct on November 22, 2013 (Count I); (3) claims for damages against Defendant Nurse Jake and Corrections Officers Holiday and Nixon in their personal capacity (Count II); claims for injunctive relief against Defendants Nurse Jake and Corrections Officers Holiday and Nixon in their official and personal capacities (Count II). *See Anderson*, 45 F.3d at 1313 ("The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, subjectively, the prison official must know of and disregard an excessive risk to inmate health or safety.") (internal quotation marks and citations omitted).

## IV.   McDowell's Action does not Present "Exceptional Circumstances"

McDowell's motion for appointment of counsel is denied. There is no constitutional right to appointed counsel in a federal civil rights action brought under 42 U.S.C. § 1983. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *op. reinstated in pertinent part*, 154 F.3d 952, 954 n. 1 (9th Cir. 1998) (en banc). Under 28 U.S.C. § 1915(e)(1), the district court may request that an attorney represent an indigent civil litigant. *See, e.g.*, *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir.1986); 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). While the decision to request counsel is a matter that lies within the discretion of the district court, the

20

court may exercise this discretion to request or "appoint" counsel only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.1991). "A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the issues involved. Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.*

Two facts militate strongly in favor of denying McDowell's motion. First, the court's initial review of McDowell's complaint indicates that it is unlikely that McDowell will succeed on the merits. Second, at this stage, McDowell's filings are lucid, well written, and sufficiently knowledgeable in order to proceed without the assistance of counsel.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Plaintiff Larry Glenn McDowell's application to proceed *in forma pauperis* (#1) is GRANTED.

IT IS FURTHER ORDERED that the Plaintiff Larry Glenn McDowell is permitted to maintain the action to conclusion without the necessity of prepayment of any additional fees, costs, or security. This order granting *in forma pauperis* status does not extend to the issuance of subpoenas at government expense.

IT IS FURTHER ORDERED that *ex parte* motion for appointment of counsel (#2) is DENIED.

IT IS FURTHER RECOMMENDED that Nevada be DISMISSED with prejudice.

IT IS FURTHER RECOMMENED that all claims against all Defendants for damages in their official capacity be DISMISSED with prejudice.

IT IS FURTHER RECOMMENED that all claims against the following Defendants be DISMISSED with leave to amend: Nurse Adams, Cynthia Sablica, Ruby, James G. Cox, Nurse Sonja, John Doe, Jane Doe, Nurse Greg, Dr. Chin, and Dr. Arenas.

IT IS FURTHER RECOMMENED that if the court adopts this Report & Recommendation, a DATE be set for the filing of the Amended Complaint to avoid dismissal with prejudice.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 12th day of December, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

22